UNITED STATES of America,
Plaintiff,

v.

Robert Bolivar DePUGH et al.,
Defendants.

Nos. 22263–4.

United States District Court
W. D. Missouri, W. D.

Jan. 17, 1967.

See also D.C., 266 F.Supp. 435.

F. Russell Millin, U. S. Atty., Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

William H. Costello, William J. Gilwee, Kansas City, Mo., for defendants.

MEMORANDUM AND ORDER OVERRULING DEFENDANT DePUGH'S MOTION FOR NEW TRIAL

ELMO B. HUNTER, District Judge.

This matter is presently before the Court on a motion for new trial filed on behalf of defendant Robert Bolivar DePugh. A consolidated brief in support of the motions for new trial on behalf of defendants DePugh, Walter P. Peyson, and Troy Haughton has been filed and the government has filed a consolidated brief in opposition to the three motions for new trial. This order deals solely with defendant DePugh's motion for new trial

■■ At the outset, the Court takes note of the well settled principle that motions for new trial are not favored and should be granted only with great caution, United States v. Costello, 255 F.2d 876 (2d Cir. 1958). Where a defendant has had a fair trial substantial justice does not require that he be given a second one, McCroskey v. United States, 339 F.2d 895 (8th Cir. 1965). Therefore the Court has approached the various points raised in the motion for new trial with a view toward determining whether defendant received a fair trial.

Defendant DePugh's motion sets forth 14 numbered grounds, some of which contain subpoints, for a new trial. Many grounds set out by defendant DePugh in his motion for new trial have been previously briefed by the parties and expressly ruled upon by the Court in memorandum orders prior to the trial and are a part of the record of this case. The Court has considered each point raised and finds that none is well founded.

■ Point 1 raised by defendant is that the Court erred in refusing to require the government to disclose the substance of the conversation between defendant DePugh and defendant Haughton alleged in Overt Act 15 of Count I of the indictment. In its order of October 24, 1966, the Court ruled that the government was not required to disclose the substance of the conversation, citing United States v. Covelli, 210 F.Supp. 589 (N.D.Ill. 1962). The court in the Covelli case, which was cited to this Court by defendant, did not require the substance

of conversations to be divulged. It is well established that the motion for a bill of particulars is directed to the sound discretion of the trial court and absent any abuse of discretion, the trial court's ruling will not be disturbed on appeal, Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927), Blackwell v. United States 244 F.2d 423 (8th Cir. 1957). Therefore defendant's contention that he was "entitled" to this information cannot be said to be an accurate statement of the law. The Court also considers it particularly significant that defendant does not state either in his motion or in the suggestions in support thereof that he was in any way prejudiced or taken by surprise as a result of the Court's ruling on this point. Nor, in the Court's opinion, could such a showing be made. The alleged conversation was one in which the defendant himself was a participant. Further, when the witness for the government, Jerry Brooks, testified with regard to such conversation no effort was made by way of cross-examination, or otherwise, to dispute either the fact that there was such a conversation or that the substance of it was other than that to which the witness testified.

The function of a bill of particulars is to render an indictment sufficiently specific to apprise a defendant of the nature and cause for the accusation in order that he may prepare for trial, that he may be spared surprise at trial, and that after trial he may be able to plead the record and judgment in bar of a further prosecution for the same offense, United States v. Haskins, 345 F.2d 111 (6th Cir. 1965). The bill of particulars also limits the scope of the government's proof at trial, see Haskins, supra. The Court's ruling that the substance of the alleged conversation need not be divulged in no way defeated the purpose of a bill of particulars.

Point 2 raised by defendant is that the Court erred in refusing to require the government to disclose the name of the person or persons who manufactured the machine guns mentioned in Overt Acts 4, 6, and 13 of Count I of the indictment. What has been said in regard to point 1, supra, is equally applicable here. Again, particularly significant is the complete failure of defendant to even allege that he was in any way prejudiced by the Court's ruling, and there is, of course, no showing of any kind which would indicate defendant was prejudiced. In view of the voluntary action on the part of the government in making available for inspection by defendant all of the firearms in its possession, the Court does not believe that defendant could have been prejudiced by the Court's ruling. Furthermore, the identity of the person or persons who *manufactured* the particular machine guns mentioned in Overt Acts 4, 6, and 13 was certainly not a critical element in this case. The gist of Count I is that defendant, along with other alleged conspirators, *conspired to do* numerous things, among which were: to transfer and make firearms without paying the required tax, and to receive and possess firearms which had not been registered.

Point 3 raised by defendant is that the Court erred in refusing to require the government to answer the request of defendant's motion for a bill of particulars as to whether or not the persons designated as "other persons" in Overt Act 15 of Count I were acting at the instance of the government at the time of the meeting alleged in that overt act. When the Court ruled on that point it clearly pointed out that it took into consideration the matters set out by the Supreme Court in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957). The Court did require the government to furnish the names and addresses of the "other persons" to the extent it had such knowledge and the government did so. With this information defendant was in a position to interview the persons named in order to determine which one, if any, was aiding the government and could have by appropriate questioning or investigation, or both, determined whether that person

was acting at the instance of the government at the time of the meeting alleged in the overt act. Failing in that defendant also had the opportunity to ask the question on cross-examination of any of the witnesses the government called who had information regarding the overt act alleged. Of those "other persons" in Overt Act 15 the government called only Jerry Brooks as a witness. Defendant did not seek by way of cross-examination whether he was acting at the instance of the government at the time of the alleged overt act. The direct testimony of Jerry Brooks certainly did not indicate that he was acting at the instance of the government at that time, and in light of the opportunity for full and complete cross-examination afforded the defendant, it cannot now be asserted that he was so acting and that the earlier ruling of the Court was error and grounds for a new trial. There is not a scintilla of evidence that Brooks was acting at the instance of the government at the time in question, and defendant not only has failed to make any showing of prejudice, he has not even alleged he was surprised or in any way prejudiced by the ruling.

As to the "other persons", other than Brooks, none of them were called as witnesses in the case. Defendant also had their names and addresses before trial and was in a position to independently determine the answer to the question posed to the government. In any event, since none appeared as witnesses in the case it is inconceivable that defendant could have been prejudiced by the Court's ruling that the government need not disclose whether they were acting at the instance of the government at the time in question. Nor has defendant even alleged prejudice.

█ Point 4 raises another matter on which the Court entered a written order after considering extensive briefs prior to the trial of the cause. Defendant contends that the Court erred in refusing to strike from the indictment all reference to 26 U.S.C. § 5841 for the reason that said section has been declared un-constitutional (Fifth Amendment, self-incrimination) and that to require a defendant to defend against a charge of possession of a firearm which no one has registered so embarrasses and confounds defendant that he could not prepare his defense. Reference is made to § 5841 of Title 26 in Counts I and III. In each count reference is made to § 5841 only in connection with 26 U.S.C. § 5851, and nowhere is defendant charged with violating § 5841. The language of § 5851 is in terms of possessing a firearm which has not been registered as required by § 5841 (the registration section of the chapter), and it is violation of this portion of § 5851 which is charged in Count III and conspiracy to violate this portion of § 5851 which is charged in Count I. This portion of § 5851 has been construed on numerous occasions and has been held constitutional when construed to mean it is unlawful to possess a firearm which no one has registered, Frye v. United States, 315 F.2d 491 (9th Cir. 1963), cert. den. 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76 (1963); Starks v. United States, 316 F.2d 45 (9th Cir. 1963), Castellano v. United States, 350 F.2d 852 (10th Cir. 1965), cert. den. 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211 (1966). These cases recognize the distinction between prosecution for the defendant's failure to register a particular firearm (§ 5841) and prosecution for possession of a firearm which no one has ever registered (§ 5851). This distinction has also been recognized by the Court of Appeals for the Eighth Circuit in Sipes v. United States, 321 F.2d 174 (8th Cir. 1963), cert. den. 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963), a case in which the question was not directly at issue, but in which the Court of Appeals spoke out clearly on the matter which is presented in the instant case, taking the position that the analysis of the Ninth Circuit is correct. Recent cases in the Fifth and Sixth Circuits also follow this analysis, Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966); Pruitt v. United States, 364 F.2d 826 (6th Cir. 1966).

The order of this Court refusing to strike all reference to § 5841 in the indictment made its position clear on the matter and the parties were aware that for the government to prove its case under Count III or that portion of the conspiracy Count dealing with possession of a firearm not registered according to § 5841, the government would have to prove defendant knowingly possessed a firearm which no one had registered. It was upon this basis that the government at trial withdrew from Count III the United States Submachine gun, M3, Caliber .45, Serial Number 216602, and did not offer that gun in evidence on Count III. According to the evidence, that particular gun had been registered by someone some time prior to its coming into the possession of defendant. Counsel for defendant had no objection to this withdrawal of the exhibit from Count III providing the Court would so instruct the jury. The Court did so instruct at that time and again later in the final instructions. Counsel for defense clearly understood the proof required of the government on each count.

Defendant fails to demonstrate how he was prejudiced by the Court's refusal to strike all reference to § 5841 and says only it "so embarrasses and confounds the defendant that he could not prepare a defense to the indictment." This is not sufficient in light of the fact defendant was fully aware both prior to trial and during trial exactly what the government would be required to show in order to carry its case to the jury on Count III and that pertinent portion of Count I. Furthermore, the instructions to the jury on this point were clear, direct and in conformity with the positions taken on § 5851 in the cases cited, supra. Defendant was in no way prejudiced by the Court's refusal to strike all reference to § 5841.

Point 5 defendant raises is that the Court erred in overruling defendant's motion to dismiss or in the alternative to require the government to elect upon which violation of the United States Code it intended to prosecute defendant. Defendant contends first that there are prejudicial allegations of offenses charging defendant with two or more separate violations of the United States Code, including § 5841, in each count of the indictment. This contention is wholly without merit. In Count I defendant is charged with violating 18 U.S.C. § 371 (conspiracy). Where a conspiracy to commit several offenses exists, the allegation in one count is not duplicitous, for the conspiracy is the crime, and it is the only crime so charged, no matter how diverse its objects, Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942). This the Court explained to defendant in its order prior to trial and the defendant was fully aware that there was but one charge in Count I upon which the Court would be able to instruct the jury, namely the conspiracy charge. Counts II and III of the indictment charge substantive offenses and each in fact charges the violation of but one statute, namely 26 U.S.C. § 5851. The defendant is nowhere charged with violating or conspiring to violate § 5841. Counts II and III mention 18 U.S.C. § 2 but this is merely the principal and accessory section of the Code. Likewise 26 U.S.C. § 5861 is mentioned in the latter two counts, but this is merely the penalties provision for the firearms chapter of the Code.

Under his point 5 defendant also contends that Counts II and III of the indictment are self-contradictory and ambiguous in that each Count alleges certain facts therein to be one offense when said allegations constitute and comprise two or more offenses as a matter of law. Defendant relies upon Wright v. United States, 243 F.2d 546 (6th Cir. 1957). That case involved an indictment charging defendant with receiving and possessing a firearm, "to wit, a silencer, which had been made in violation of Section 5821, Title 26 USC: said possession being a violation of Section 5851, Title 26 U.S.C." Two members of the Court found that the indictment was defective but that there had been a waiver of the defect, and the third member

of the court, concurring, found that the indictment was not defective. The judges finding that it was defective stated that since § 5821 provides a number of possible violations, the indictment should have informed the defendant "what particular paragraph or paragraphs of Section 5821 he was charged with violating and the facts constituting such violation should have been stated in detail," loc. cit. 547. Count II in the case under consideration fully meets those requirements which two of the judges in the Wright case, supra, called for. Count II states, in part, "which firearm had been made in violation of Section 5821, Title 26, United States Code, in that the making tax of $200.00 had not been paid prior to the making of this firearm, and in that, prior to the making of such firearm, there was a failure to file a written declaration of intention to make such firearm." Nor can defendant contend that the failure to pay the making tax and the failure to file a written declaration constitutes the charging of two offenses in a single count, Vincent v. United States, 361 F.2d 474 (8th Cir. 1966). In the Vincent case the Court of Appeals for the Eighth Circuit stated "it is well settled that when a statute denounces several acts as a crime, an indictment drawn in the language of the statute is not duplicitous if the acts are pleaded conjunctively in one count." See also Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); Cordova v. United States, 303 F.2d 454 (10th Cir. 1962). Count II is not self-contradictory or ambiguous and it charges only the commission of a single offense.

■ Nor is Count III self-contradictory or ambiguous, and from what has been mentioned previously, Count III charges but a single offense, namely possession of unregistered firearms, in violation of § 5851.

■ Under his point 5 defendant further contends that the Court erred in overruling his motion to dismiss or elect and that he was prejudiced in that "(1) he was embarrassed and confounded in preparing separate defenses; (2)

that the jury could use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; (3) that the jury could cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; (4) that the element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one." Rule 8, F.R.Crim.P., provides in part:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged * * * are of the same or similar character or are based on the same transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Even a cursory reading of the indictment in this case will clearly show that the offenses charged are based on a series of connected acts or transactions that constituted parts of a common scheme or plan. On its face therefore the joinder of the various charges in the one indictment was entirely proper under Rule 8(a), supra. See also United States v. Bachman, 164 F.Supp. 898 (D.D.C.1958) in which the indictment charged all four defendants with conspiracy to violate the National Firearms Act and also charged two of the defendants with substantive offenses related to the conspiracy charge. See also Scott v. United States, 115 F.2d 137 (10th Cir. 1940), cert. den. 312 U.S. 678, 61 S.Ct. 449, 85 L.Ed. 1117 (1941).

In Finnegan v. United States, 204 F.2d 105 (8th Cir. 1953), cert. den. 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953), the Court of Appeals for the Eighth Circuit pointed out at 110, "that the fundamental principle underlying the practice of requiring the prosecution to choose between offenses or counts is the prevention of prejudice and embarrassment to the accused, and if the charges are of the same general character and are mani-

festly joined in one indictment in good faith, the government should not be required to elect upon which count or counts it will proceed to trial." This is the case in the indictment presently before the Court. Clearly the charges are of the same general character and to require the government to pursue them in three separate trials would be a most unreasonable requirement. The broad statements such as defendant makes that the joinder prejudiced him do not alter this.

The Court specifically instructed the jury that "a separate crime or offense is charged against one or more of the defendants in each count of the Indictment. Each offense, and the evidence applicable thereto, should be considered separately. The fact that you may find if you do so find all or some of the accused, guilty or not guilty of one of the offenses charged should not control your verdict as to any other offense charged." In light of this cautionary instruction the Court cannot presume the jurors disregarded their sworn oath and misused the evidence placed before them.

In his suggestions in support of the motion for new trial defendant has cited seven cases which he contends support his position that there is an improper joinder of counts in the same indictment. The Court has considered each of these and finds that they are not in point. An illustration of their content is the following quote from Ward v. United States, 110 U.S.App.D.C. 136, 289 F.2d 877, at 878 (D.C.Cir. 1961) which is contained in defendant's brief: "But 'where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact * * *.'" This certainly is not the factual situation in the case at bar. The Court is not persuaded that there was an improper joinder of counts in the indictment.

Point 6 which defendant raises is that the Court erred in overruling defendant's motion for a continuance because of highly prejudicial and inflamatory publicity. On October 30, 1966, law enforcement officials in New York seized a number of men and a large amount of arms asserting that the men so seized were Minutemen who had planned to stage raids on certain privately operated camps in New York, New Jersey and Connecticut. Defendant DePugh is the self-proclaimed leader of the Minuteman organization and some of the publicity linked his name and the names of the other defendants with this New York incident. On November 2, 1966, the defendant filed a motion for continuance of the trial from the scheduled date of November 7, 1966. The Court held a hearing on the motion and resolved that the only sure test for determining whether the pretrial publicity was such as would prevent defendants from having a completely fair and impartial jury hearing the case would be to proceed with a jury selection on the date set for trial. Prior to the hearing on the motion the Court conferred with representatives of the major news media of the Kansas City area (newspaper, radio, television) and elicited their full support in refraining from publicizing matters regarding the trial of the defendants and related items regarding the Minutemen or the New York incident. The Court was not convinced that it would be in the interests of justice and in defendant's best interest for the Court to grant the motion for a continuance without first making actual inquiry of veniremen on voir dire. Several reasons for this are apparent. First, the Court took into consideration the prospect of continued and mounting publicity as a result of the New York incident— the likelihood of resulting indictments and trials of some of those arrested, and the possibility that the defendant might take an active role in the defense of any such cases. The Court was also well aware of the fact that the defendant had demonstrated a predilection for publicity by his own activities both before and after the indictment had been returned in this case.

Furthermore, the record will demonstrate that the Court was very careful in its examination of veniremen in order

that only fair and impartial jurors were selected. From the time the members of the panel appeared in the Courtroom for the voir dire examination and until the jury was selected they were not exposed to any information related to the case or the Minutemen except that which they heard in open court. The basic approach used was as follows: By preliminary general questions the Court was able to separate those members of the panel who had any knowledge concerning the defendants or the Minutemen from those who did not. While in the separate groups the members of the panel were carefully watched by United States Marshals and were under specific instructions not to discuss anything connected with the case or with the defendants or with the Minutemen organization. The Court called numerous members of the panel who had expressed some knowledge of the defendants or Minutemen back into the Courtroom individually and questioned them extensively regarding what, if any, knowledge they had concerning the Minutemen, the New York incident, or the individual defendants. The Court made it clear to defendants and their counsel that any challenge for cause on the basis of adverse publicity would be sustained; and the record shows that every challenge for cause made by the defense was in fact sustained. A large number of the panel had no knowledge of the defendants or the Minutemen. After some of those who had expressed some knowledge of the defendants or the Minutemen had been individually examined in open court and had not been challenged, the Court, with the consent of all counsel, halted the individual examination. When those who had no knowledge of defendants or the Minutemen were placed with those whose knowledge was so limited that defense counsel declined the Court's open invitation to challenge, the panel consisted of 43 persons. From this panel of 43 the members of the jury and the alternates were chosen. There was no member of this panel who was challenged by the defendant because of knowledge of the defendants or the Minutemen organization. The Court sustained each and every challenge for cause which the defendants made. After the jurors and alternate jurors were selected they were sequestered for the duration of the trial and until the Court accepted the verdicts.

 Defendant was entitled to a fair and impartial jury and in view of the fact that not one member of the panel from which the jurors and alternates were ultimately selected had been challenged, it cannot now be said that defendant did not have such a jury. Since defendant's motion was based upon the contention that the pretrial "publicity would prevent Robert Bolivar DePugh and the other defendants herein from having a fair and impartial jury at a trial at this time * * *" it is clear that such motion had to be denied after a fair and impartial jury, to which no one raised a challenge, was impaneled. Pretrial publicity in and of itself is not grounds for a continuance. Also, the Court notes that the motion for a continuance was not reasserted by the defendants after the jury was selected. Therefore, it appears that as a procedural matter, the question has been waived.

 Point 7 which defendant raises is that the Court erred in admitting into evidence, over objection of defendant, government's exhibit number 12, the .45 caliber grease gun, serial number 216602 for the reason that said gun had been registered with the Secretary of the Treasury or his agent as shown by government's exhibit 18. There is no merit in this contention. The above described firearm was offered in evidence and accepted subject to its being connected up, however, when the evidence developed that the firearm had been registered on a prior occasion, the Court, at the request of the government, withdrew this firearm from consideration by the jury as to the charge in Count III and admitted it into evidence only as to Count I. The Court carefully instructed the jury as to the use that could be made of that firearm in this case. Counsel for de-

fendant had no objection to this withdrawal of the exhibit from Count III providing the Court would so instruct the jury. The Court did so instruct at that time and again in the final instructions. Counsel for defense clearly understood the proof required of the government on each count. In the final instruction to the jury the Court again stated exactly which firearms were involved in Count III and reminded the jury once again that the grease gun described above was not evidence as to Count III, and should not be considered on that count.

 Point 8 which defendant raises is that the Court erred in admitting into evidence, over objection of defendant, the government's exhibit number 13, Gerald Johnson's gun, for the reason that the evidence disclosed that the firearm had been registered with the Secretary of the Treasury or his agent as shown by Gerald Johnson's testimony and government exhibit number 64. This firearm is the MP–40, Schmeisser machine pistol, caliber 9mm., Serial Number 6575 which is mentioned in Count II of the indictment. That count charged defendant with possessing the above described firearm "which had been made in violation of Section 5821, Title 26, United States Code, in that the making tax of $200.00 had not been paid prior to the making of this firearm, and in that, prior to the making of such firearm, there was a failure to file a written declaration of intention to make such firearm." Because this was the charge in Count II rather than a charge of possessing a firearm which no one had registered, the fact that the firearm had been registered by someone in the past did not render the weapon inadmissible on Count II. Section 5821 provides that the term "making a firearm" includes making by manufacture, putting together, alteration, any combination of manufacture, putting together, alteration or otherwise. Restoring an unserviceable firearm to a firing condition comes within this definition. There was evidence to show that this firearm had been registered as an unserviceable firearm in the 1950's by Gerald Johnson and that it was sold to a firearms dealer in Chicago, Illinois in the early 1960's, at which time it was still unserviceable. The evidence further showed that no one thereafter filed a declaration of intention to restore the firearm to a firing condition and that no one had paid the making tax of $200.00 required upon the restoration of the firearm to a firing condition. When this firearm was found in December, 1965, where the evidence showed defendant Peyson and Raithby Roosevelt Husted had placed it, the firearm was in a firing condition. As will be discussed in detail at a later point, there was sufficient evidence to show that the defendant DePugh had possession of this firearm. Therefore, it clearly was admissible as against the defendant cn Count II of the indictment. It was, of course, also relevant to and admissible against defendant on Count I, the conspiracy count. Defendant's objection to government's Exhibit 13 was that it hadn't been connected with these defendants. The Court permitted it to be introduced subject to its being connected up and defendant did not renew this objection at a later time, apparently for the simple reason that it had been so connected. The Court, during the course of the trial, instructed the jury that this firearm was admissible against defendant only on Counts I and II. The Court cannot presume that the jury disregarded this instruction.

In the general instructions to the jury the Court carefully explained to the jury what firearm or firearms were involved in each count and that the evidence applicable to each offense should be considered separately.

 Point 9 raised by defendant is that the Court erred in denying defendant's motion for acquittal at the conclusion of the evidence for a number of reasons. First, defendant contends that the firearm about which the witness Kendall testified was not shown to be operative. This contention is without merit. There was considerable other evidence from which the jury could have found the existence of a conspiracy and

the involvement of defendant, Walter Patrick Peyson, and Troy Haughton therein. To recite that evidence in detail here would serve no useful purpose. It is sufficient to point out the testimony of the witness Summerford in regard to silencers, conversations with the defendant DePugh, conversion parts for M-1 carbines, the article on How to Organize a Combat Team; the testimony of the witness Brooks in regard to training sessions, statements by defendant Haughton that certain automatic weapons at a training session were active, statement by defendant DePugh that a gunsmith was being brought to Independence to manufacture machine guns; the testimony of witness Clark in regard to statements made by defendant Haughton about plans for making machine guns, the training session in California at which defendant Haughton fired a pistol equipped with a silencer; the testimony of numerous witnesses, including Raithby Roosevelt Husted, in regard to the renting of the farmhouse and concealing automatic weapons which the evidence showed were operable. The fact that the witness Kendall did not testify that the firearm he saw was operable (nor did he testify it was not operable) was not in any way fatal to the government's case.

Defendant also contends that the Court erred in denying the motion for acquittal because the government's evidence failed to prove the transfer tax on the firearms alleged in Counts I, II, and III had not been paid by the transferor. At the outset it must be made clear that only in Count I, the conspiracy count, is the matter of illegal transfer an issue. In Count II the issue is possession of a firearm which had been made in violation of law, and in Count III the issue is possession of firearms which had never been registered. There was sufficient evidence admitted on Count I to justify the jury finding that defendant, with coconspirators, conspired to transfer firearms without paying the required tax. The certifications from the Alcohol and Tobacco Tax office in Washington, D. C.,

showed that the .50 caliber machine gun, the MP–40 Schmeisser machine pistol bearing serial number 58971, and the .45 caliber Thompson submachine gun bearing serial number 94800 had never been registered with the Secretary of the Treasury and no tax had ever been paid on the transfer of these three weapons. The certification also showed that on the MP–40 Schmeisser machine pistol bearing serial number 6575, no one ever paid a transfer tax on the transfer of that firearm after the tax exempt registration by Gerald Johnson in the 1950's. The certification likewise showed that on the .45 caliber grease gun bearing serial number 216602 after the tax exempt transfer of the then unserviceable firearm in April, 1963, no one ever paid a transfer tax on the transfer of the firearm. Further, the certification of the Alcohol and Tobacco Tax office shows that none of the three defendants have at any time paid any tax on the transfer of a firearm, nor has any of them filed any transfer order form.

Defendant further states there was error in the Court's denial of the motion for acquittal because the government's evidence failed to prove that defendant knowingly possessed firearms upon which the transfer tax had not been paid by the transferor. Again it is well to note that only in Count I does the issue of illegal transfer of firearms appear, and the transfer issue therein is not framed in terms of possession of firearms which have been transferred illegally, rather it is framed in terms of a conspiracy to commit offenses against the United States, namely, to violate § 5811 by transferring firearms without paying the required tax. It is elementary that one may be prosecuted with his fellow conspirators for the crime of conspiracy albeit the plot was halted short of actual completion, Harney v. United States, 306 F.2d 523 (1st Cir. 1962), cert. den. Lawton v. United States, 371 U.S. 911, 83 S.Ct. 254, 9 L.Ed.2d 171 (1962). Having these matters in mind it is clear that the government was not even required to prove that defendant DePugh

in fact possessed firearms upon which the transfer tax had not been paid. The government under this portion of Count I needed only to prove that defendant was a member of a conspiracy one of the purposes of which was to transfer firearms without paying the required tax and an overt act in furtherance of the conspiracy. And the overt act need not have been committed by this particular defendant. A member of the conspiracy is responsible for all of the acts that have been committed by any other member of the conspiracy in furtherance of the conspiracy, Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). There was ample evidence to support an instruction on this portion of the conspiracy count, see discussion supra, and defendant's contention regarding the purported failure by the government to prove actual possession by De-Pugh of an illegally transferred firearm is without merit.

■ Defendant next contends the Court's denial of the motion for acquittal was erroneous because the government failed to prove that defendant DePugh knowingly possessed or had control over any of the firearms marked government's exhibits 12, 13, 14, 15, and 74. There are two approaches which can be taken toward this matter. The one is that acts committed by one conspirator in furtherance of the conspiracy are attributable to the other conspirators for the purpose of holding the latter responsible for the substantive offense. Robinson v. United States, 94 F.2d 752 (5th Cir. 1938), Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), rehearing den. 329 U.S. 818, 67 S.Ct. 26, 91 L.Ed. 697 (1946). Under this approach there is no question but that there was ample evidence to support a jury finding that the defendant DePugh had possession of the pertinent firearms as charged in Counts II and III. As was mentioned, supra, there was no need for evidence upon which a jury could make a finding that defendant DePugh possessed a firearm in evidence on Count I, the conspiracy count. The Court did

not instruct the jury along the lines of this first approach to the matter of possession. Rather, the Court instructed along the second approach, namely that of aiding and abetting under the general provisions of the Criminal Code that "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission is a principal." This latter approach was more favorable to the defendant. Under this second method of approaching the matter, the evidence warranted a finding by the jury that defendant DePugh was guilty of the substantive possession charges in Counts II and III, and therefore the Court could not grant defendant's motion for acquittal.

Of the above mentioned government exhibits, only exhibits 13 (the MP–40 Schmeisser machine pistol No. 6575 in Count II), 14 (the MP–40 Schmeisser machine pistol No. 58971 in Count III), and 15 (the M1 Thompson submachine gun No. 94800 in Count III) are pertinent to the challenge by defendant DePugh that there was no proof that he possessed or had control over certain guns. The other exhibits were used as to Count I only. These three pertinent firearms were shown by the evidence to be the ones recovered from by a cemetery near Coloma, Missouri. The witness Raithby Roosevelt Husted testified that these were the weapons which he and defendant Peyson had buried there at an earlier date.[1] The evidence further showed that some of the materials used in preparing the firearms for concealment were obtained from the Biolab building which belongs to defendant DePugh. The evidence also showed that after the above three firearms were prepared and wrapped the witness Husted saw them in defendant Peyson's automobile. Then a few days later Husted and Peyson were driven by defendant DePugh to the cemetery near Coloma, Missouri. Upon their arrival Husted was told by Peyson where to look for the packages and Husted found the packages containing the same firearms he had helped Peyson wrap some

few days earlier. Defendant DePugh left the cemetery area prior to the time the holes were dug, telling Peyson and Husted he would return for them later. Defendant DePugh did return for them later, after they had buried the firearms, and he drove them back to Norborne, Missouri. The evidence showed that defendant DePugh told Peyson and Husted he was glad they had already started walking down the road from the cemetery when he met them to pick them up because that way he would not lead government agents to the cemetery. The evidence showed that defendant Peyson referred to defendant DePugh as "the boss" and that DePugh had given detailed orders on another occasion, shortly before the one described above, as to how to conceal another firearm and that Peyson obeyed these orders. Defendant DePugh is the leader of the Minuteman organization and Peyson's superior. There is other evidence to indicate defendant DePugh was active in knowingly aiding, abetting, commanding, and counseling defendant Peyson's possession and concealment of the three firearms involved in Counts II and III; however, it would serve no useful purpose for the Court to recite more.

■ Under the law possession may be actual or constructive, Mack v. United States, 326 F.2d 481 (8th Cir. 1964), cert. den. 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964). Constructive possession presupposes a power to exercise dominion and control over the matter in question and such power is susceptible of proof by either direct or circumstantial evidence, Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). Language in the case of Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961) sheds light on the matter presented in the instant case. There the court stated at 312: "Likewise, we see no reason why an object cached by a person or his operative or agent in a certain spot on deserted land, not owned by him, perhaps located ten miles from the nearest highway, house, habitation or person, could not be deemed in law within that person's possession, there being no explanation." Although there was no direct evidence that defendant DePugh was seen physically holding one of the three above mentioned firearms, there was certainly sufficient evidence to show that defendant DePugh, "the boss", constructively possessed them through defendant Peyson.

■■ It is not clear what defendant has in mind when he contends there was a failure to prove defendant *knowingly* possessed the firearms. There is no particular scienter requirement in § 5851 and the authorities so hold, United States v. Fogarty, 344 F.2d 475 (6th Cir. 1965); United States v. Decker, 292 F.2d 89 (6th Cir. 1961), cert. den. 368 U.S. 834, 82 S.Ct. 58, 7 L.Ed.2d 36 (1961); Sipes v. United States, 321 F. 2d 174 (8th Cir. 1963), cert. den. 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963). The Sipes case, supra, points out that the only knowledge required is knowledge that the object possessed is a gun. The Court in the Sipes case, supra at 179, stated, "This is all the scienter which the statute requires. It is not necessary that, in addition to knowing possession, there also be knowledge on the defendant's part that it was made in violation of § 5821." The evidence at the trial showed that the defendant knew the firearms involved in Counts II and III were guns and not some other objects. The evidence is sufficient to show that defendant knowingly possessed the firearms in Counts II and III. In fact, the evidence indicated defendant knew his secretive possession was not lawful.

What has been said in regard to the contention that the government failed to prove defendant knowingly possessed or had control over any of the firearms marked government's exhibits 12, 13, 14, 15 and 74 fully treats the matter which defendant raises in his point 9(f) (knowingly possessed the firearm in Count II) and for this reason the Court will refrain from further discussion of the ele-

ments of knowing possession when that contention is reached.

■ Defendant's contention enumerated 9(e) states the Court erred in permitting the United States Attorney to read to the jurors Sections 5841 and 5851 of Title 26, United States Code, for the reasons that said sections are repugnant and contrary to the fifth and fourteenth amendments to the United States Constitution. At the outset it must again be mentioned that the defendant was not charged with violating § 5841 (registration), but rather was charged with violating and conspiring to violate § 5851 by possessing an unregistered firearm. Section 5851 is that section of the chapter dealing with illegal possession of firearms and the language of § 5851 makes reference to numerous other sections of the chapter. In part § 5851 states: "It shall be unlawful for any person to receive or possess any firearm * * * which has not been registered as required by section 5841." As has been pointed out previously this provision has been held constitutional on numerous occasions when it has been construed to mean possession of a firearm which has never been registered by anyone. Inasmuch as § 5851 makes express reference to § 5841 and numerous certifications were admitted into evidence referring to the fact that a search of the records showed that no one had ever registered certain of the firearms with the Secretary of the Treasury or his delegate, the government was entitled to read § 5841 to the jury in order that the jury might know the registration procedure the law requires so that if the jury found that the firearms in question had not been registered with the Secretary or his delegate the jury would know that the firearms had not been registered as required by law. The final instructions to the jury clearly took away any possible fifth amendment problem for they were phrased in terms of possession of a firearm "which no one has registered." The Court cannot presume the jury disregarded this instruction.

As to the reading of § 5851 the Court can see no error in this. It is not entirely clear upon what basis defendant complains of this. This portion of § 5851 which makes reference to § 5841 has been declared constitutional on numerous occasions. If defendant has in mind that portion of § 5851 which states, "Whenever * * * the defendant is shown to have or to have had possession of such firearm, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such possession to the satisfaction of the jury," the simple answer is that the Court did not permit this portion to be read to the jury and did not instruct or otherwise inform the jury of this provision. Nor did the government rely upon this presumption. The government put on its evidence and the Court instructed the jury just as though § 5851 did not contain the language quoted above.

Point 10 raised by defendant is the same point which was raised in point 9, but does not have the various subparts which point 9 has. The Court has in detail discussed point 9 and for that reason there is no need to dwell further on the subject of the ruling on the motion for acquittal.

■ Defendant's point 11 states the verdict is not supported by substantial evidence. From what has been said previously it is clear that this contention is without merit. There was abundant evidence from which the jury could find defendant was a member of the conspiracy and that the purpose of the conspiracy was to violate the sections of the National Firearms Act as stated in the indictment. Numerous of the alleged overt acts were proved. Likewise with regard to the substantive offenses charged in Counts II and III, there was abundant evidence from which the jury could find defendant was guilty of the illegal possession of firearms as charged therein. It would serve no purpose for the Court to recite this evidence at this point.

Defendant's point 12 is that the Court erred in admitting the testimony of the government's witness Raithby Roosevelt Husted. The reasons given by defendant as to why this was error are: In the government's bill of particulars the government stated that the witness Husted was not, at the times and places alleged in (Count I of) the indictment, acting at the instance of the government; but that there was a judicial finding by the Court that the witness Husted was and had been a reliable informer for the government. The Court fails to see that this is any basis for concluding that the testimony of Husted was not admissible. It must be pointed out that defendant here does not state that certain particular testimony on the part of the witness was inadmissible, he is stating that this witness could not testify to *anything in this case*. The finding by the Court with regard to the motion to suppress filed by defendant Peyson that the witness Husted had been a reliable informer is certainly not contradictory of the government's statement that Husted was not acting at the instance of the government at the times and places alleged in Count I of the indictment. The record shows that Raithby Roosevelt Husted informed to the government on his own initiative *after* the defendant, with fellow conspirators, had committed the unlawful acts to which Husted testified. These grounds stated by defendant do not support his broad contention that the witness Husted should not have been permitted to testify at all in the trial of this case.

Point 13(a) raised by defendant asserts the same contentions as does point 5(c) which has been discussed in detail previously. For that reason it would serve no purpose to further discuss the same contentions at this point. Contentions in point 13(a) are without merit.

Point 13(b) raised by defendant states defendant was prejudiced and denied a fair trial because the Court permitted the government to introduce evidence to prove violation of laws which have been declared unconstitutional as violative of the fifth and fourteenth amendments. Apparently defendant is here again raising the contention that prosecution under that portion of § 5851 which deals with *possession of unregistered firearms* is unconstitutional, because prosecution of a particular defendant for that defendant's failure to register a firearm is no longer permitted. This matter has been fully discussed, supra. The Court has followed a series of cases which have ruled on this question and by its rulings on the evidence and detailed instructions to the jury has taken any fifth amendment problems of self-incrimination out of the case. Defendant does not enunciate what fourteenth amendment grounds he has in mind on this matter. If the fourteenth amendment grounds are based on the presumption portion of § 5851, the simple answer is that that portion was not relied upon in this case and no mention was made of it to the jury. The Court sees no violations of either the fifth or fourteenth amendments in this case. Defendant's point 13(b) is without merit.

Point 13(c) raised by defendant is that he was prejudiced and denied a fair trial because the United States Attorney argued to the jury that defendant should be convicted for the reason that defendant had violated laws that have been declared unconstitutional and void. Defendant's brief fails to shed any light upon this particular contention.

If defendant is referring to argument concerning that portion of § 5851 dealing with possession of unregistered firearms, that contention is without merit, for the United States Attorney made no such argument that these defendants had to register the firearms. The Court has carefully examined the argument made by the United States Attorney and finds that it was within the law of this case as was explained to the jury in the Court's instructions.

Defendant's point of contention 14 is that "the Court erred in charging the jury and in refusing to charge the jury."

Defendant's brief sheds no light upon this contention.

To verdict directing instructions on Counts I, II, and III, defendant interposed the general objection that the Court could not instruct on more than one count of the indictment. The objection was phrased in terms of the contention raised in point 5(c), that it was error to permit the joinder of several offenses in one indictment. The Court has fully discussed this phase of the case, supra.

In two unnumbered paragraphs defendant moves the Court to set aside the verdict returned in this case and to grant a new trial on the grounds of: 1) Newly discovered evidence in regard to the witness Husted; 2) Suspected wiretap. As to the newly discovered evidence defendant has filed an affidavit to the effect that certain statements made before trial by Raithby Roosevelt Husted, in regard to the way members of the Federal Bureau of Investigation badly mistreated him, were presumed by defendant to be true, but that in fact they were false and that after the statements became public the Federal Bureau of Investigation investigated and found them to be false. Defendant further states in his affidavit that the statements and the investigation thereof by the Federal Bureau of Investigation, and that agency's conclusion that the statements were a fabrication, were suppressed by the Federal Bureau of Investigation until after the trial of this case because the Justice Department feared it might infuence the trial. Defendant also states in his affidavit that it is reported that the foreman of the jury stated that he thought everyone was influenced by the testimony of the witness Husted. Defendant cites the case of Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), in support of his contention. Essentially, what defendant says he now knows which he did not know at the time of trial is that the Federal Bureau of Investigation, after making an investigation concluded that the statements which Husted had made to defendant DePugh were fabrica-

tions. There is no contention on the part of defendant that he was unaware of the content of the statements themselves; in fact, the record (see motion of John E. Blumer to suppress filed September 12, 1966, and suggestions in support thereof, the government's suggestions in opposition thereto and the hearing on that motion) indicates that he was. The question then boils down to this: Is defendant entitled to a new trial because he did not learn what position the Federal Bureau of Investigation took on these statements, allegedly made by Husted, until after the trial of the case? The answer must certainly be no. Defendant himself was free to believe or disbelieve the statements which Husted allegedly made and of which defendant had knowledge. Defendant himself was free to conduct his own inquiry into the truth or falsity of the statements. The government, at the Court's direction, gave the location at which the witness Husted could be reached for interview. There is no indication in the record that defendant was unable to so interview Husted if he desired to. The statements attributed to Husted are so bizarre, they would put a reasonable man on notice to investigate them. Defendant was free to make use of the statements at trial by way of cross-examination for impeachment purposes or not as he, with the advice of his personally selected trial counsel, saw fit. There was no duty on the part of the government to disclose to defendant whether it believed or disbelieved the statements attributed to witness Husted. Nor could the government have made any showing in its case-in-chief of the statements themselves or of the position the government took on them because such would not have been relevant to the issues involved in the case. The information which defendant had in his possession at the time of trial regarding the statements allegedly made by Husted could have been used on cross-examination in an effort to impeach the credibility of Husted. For reasons known to defendant, and to defendant's counsel, as a matter of trial tactics the information was not used at all. What defendant at-

tempts to set forth here is not newly discovered evidence as that phrase has legal meaning. A brief quote from 6 Moore's Federal Practice, ¶ 59.08(3) is applicable:

"To constitute newly discovered evidence for which a new trial may be granted \* \* \* the evidence must pertain to facts in existence at the time of the trial, and not to facts that have occurred subsequently \* \* \*. To warrant a new trial the evidence must not have been known to the movant at the time of the trial; and, moreover, the movant must have been excusably ignorant of the facts, i. e., the evidence must be such that it was not discoverable by diligent search. A party who has failed to evaluate evidence properly and thereby failed to submit it at the trial, or a party who desires to present his case under a different theory in which facts available at the original trial now first become important, will not be granted a new trial.

Of course, the evidence must be such that it would be admissible and credible. In general, a new trial is not warranted unless the evidence, if it had been presented at the former trial, would probably have produced a different result. Evidence, therefore, that is merely cumulative, or whose only effect is to contradict or attack the credibility of witnesses will ordinarily not warrant a new trial, in the absence of very unusual or extraordinary circumstances."

The additional information which defendant states he now has is that the Federal Bureau of Investigation did not believe that the statements attributed to Husted were true. The Court notes that virtually all of Husted's testimony was strongly corroborated by other evidence, including physical evidence. At best, and questionably so, this new information is of an impeaching nature, and is collateral to any issue in the case. It is the conclusion of this Court that had it been permitted to be used at trial it would have in no way altered or affected the outcome of this case.

Moreover, the Court held a special evidentiary hearing on the motions for new trial and defendant offered no evidence at that time to prove the numerous conclusions recited in his affidavit. Defendant offered no evidence that the Federal Bureau of Investigation in fact investigated the pretrial statements of Husted, or that the investigation was made prior to trial, or that the Federal Bureau of Investigation did in fact conclude that the statements were false, or that such investigation and conclusion were "suppressed" because the Justice Department feared it might influence the trial.

Nor does the holding in Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), alter the situation. The case at bar is readily distinguishable from the factual setting in the Mesarosh case. In the case at bar the matter is raised by defendant in a motion for new trial. In the Mesarosh case the matter was raised by the government, a fact which the Supreme Court took note of when it stated at page 9, "It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense \* \* \* presenting untruthful statements by a Government witness subsequent to trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense ordinarily will not support a motion for a new trial, because new evidence which is 'merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." Nor were the statements attributed to Husted made under oath, or in official government proceedings, nor were they preserved in an official record. The statements attributed to the government's witness in the Mesarosh case were given as testimony by that witness before Senate subcommittees and before courts of record. Furthermore, all but one of the statements made by the witness in the Mesarosh case occurred after the trial of the case in which he was the government's witness. In the case at bar the statements were

made before trial and defendant was aware of them prior to trial.

 The final point which defendant raises is that of the suspected wiretap of the telephone in his home and in the office and homes of his attorneys, William J. Gilwee and William H. Costello. Defendant states in the motion for new trial that he has reason to believe that the suspected wiretap was made by the Federal Bureau of Investigation, the Department of Justice, the Alcohol and Tobacco Tax Unit, and Internal Revenue Service of the Treasury Department. The Court held an evidentiary hearing on the motions for new trial and defendant was given full opportunity to put on evidence to support his belief that the above mentioned phones were the subject of a wiretap by any or all of the above mentioned agencies. At that hearing defendant took the stand and gave testimony concerning his suspicion of a wiretap. Likewise his attorneys testified concerning peculiarities they had noticed with their telephones prior to and during the course of the trial. Defendant Haughton also testified on this subject. The representatives from the telephone companies involved were called by the defense as witnesses. Their testimony in no way indicated a wiretap of any of the pertinent telephones. The evidence produced at the hearing is not persuasive that any of the telephones involved in this challenge were the object of a wiretap. Further, the evidence is not persuasive that, if there were a wiretap, it was committed by any of the government agencies which defendant lists. The Court is not persuaded that there was any information relevant to this case which was gained as a result of a wiretap conducted by any one. Defendant's contention in regard to a suspected wiretap is wholly unsupported by evidence and is found to be unmeritorious.

For the reasons set forth in detail in this order the Court hereby overrules in its entirety defendant Robert Bolivar De Pugh's motion for a new trial.

It is so ordered.

See also D.C., 266 F.Supp. 417.